Case number 19-3639, Western Arkansas. Samuel Hartman v. Dexter Payne. Mr. Lawrence? Please, the court. Am I coming through okay? Yes, sir. Judge Grunder, I'm sorry to interrupt. This is Kim. Before we get started, this is the case where we had trouble getting Ms. Cain, the Applebee's attorney, on. I just think I want to make sure we can hear her. Ms. Cain, can you hear us? Can you hear me? Yes. We have audio with an echo now. Mute, I'm sorry. If it's all right, can you hear me now? We can hear you, it just has an echo. I'm going to disconnect the telephone now. Mute your video, Ms. Cain. Okay. Okay, can you still hear us now? Yes, I can. Very good. You can put your camera back on, but just leave the microphone turned off. All right, thank you. Mr. Lawrence, I think you may proceed. Please, the court, may I reserve five minutes for rebuttal? Certainly. Thank you. Thank you. If it's okay with the court, I'd like to begin with just establishing three points that I think would frame the case as it sits now, fully briefed with a reply brief as we're here today. My main issue is that Judge Holmes erred in his finding of no prejudice because, as he said, the penetration went past her labia. I would ask the court to look at page 89 of the record on appeal, I'm sorry, of the joint appendix, page 89, which is the file transcript. The word vagina is used. She does say that he was inside her vagina. The vagina, as we all know, is beyond or past the labia. And to me, that would establish prejudice. The word vagina actually does appear. I think Judge Holmes missed it. The second point I want to make is with respect to procedural default. I would not presume at all to pretend to understand procedural default such as Judge Strass and Judge Benton. They wrote Thomas versus Payne. The only thing I would like to establish are some dates, and the key dates are these. The motion for reconsideration was filed in Franklin County on January 18, 2016. At that point in time, there was no appeal pending in the Arkansas Supreme Court. Thomas versus Payne talks about the fact that the procedural default has to occur in the initial collateral review court. That's Franklin County. That's where the default occurred. It did not occur on appeal. The notice of appeal was filed three days later. It was in February that the Circuit Court of Franklin County finally turned to denying the motion for reconsideration, and then a supplemental notice of appeal was filed. These documents, I can give you the citations to them. They're not in the joint appendix. But what the parties submitted to the 8th Circuit Clerk's Office was a thumb drive that was identical to the thumb drive given to the magistrate. And perhaps the court is not as fully versed in what happened as we are, but we gave the thumb drive to the magistrate in April of 2019, April 30 at the evidentiary hearing. The thumb drive, eventually it was downloaded by Judge Ford. It was given to a law clerk who unfortunately died afterwards. They never found the thumb drive again. When we were putting together the record, we found this out, and so the parties stipulated that the Attorney General's Office would prepare an identical thumb drive and send it to you. If the court needs the page numbers within the thumb drive of where these notices of appeal and the motion for reconsideration are, I can give them. I can do it now or I can do it later. But the point being, in terms of Thomas v. Payne, I don't see how there can be an argument that the procedural default happened in the Arkansas Supreme Court when the defaulting act was the filing of this motion for reconsideration with Mr. Witt's notes, and it was filed in Franklin County. It wasn't filed in the Arkansas Supreme Court. So that's important. So you say that, and I was going to ask you this question. You say the defaulting act, was it failing? I think you're suggesting that. It was failing to submit the notes from the attorney to the post-conviction court. That is what you view as the defaulting act here. Well, that's the ineffective part of Mr. Rosenzweig's conduct for purposes of Martinez, but the defaulting act, procedurally, is the motion. The Arkansas Supreme Court, in its opinion, focused on the fact that Arkansas Rule 37 does not allow that type of motion. I see. So it's part law, you know what I'm saying? It's part an ineffective issue in terms of what did the lawyer do strategically. He didn't find the notes. He didn't submit them during the evidentiary hearing in Franklin County. But the procedural default, the procedural rule violated by him, also occurred in Franklin County. It's when he filed the Rule 37 motion in Franklin County on January 18, 2016, and that's why the Arkansas Supreme Court wouldn't reach the issue at all. You know, Mr. Rosenzweig, if we're going to talk about it in practical terms, he could not have filed an appeal on the Rule 37 court's denial and not appeal the denial of the motion for reconsideration. Because if we're going to be fair to the Rule 37 court, the Rule 37 court would have made the correct ruling based on the record before it, based on Mr. Witt's testimony. Oh, I never saw these notes, right? So there's no way to appeal that without the notes. The notes are what... But I understand that. That gets back to my question. You could have appealed, or counsel could have appealed both, right? Counsel could have appealed the motion for reconsideration and the underlying merits determination. Because this is not like Martinez in one important respect. There was a full hearing on the underlying claim. What was missing was a piece of evidence. And so really what we have here are two defaulting acts. We have a defaulting act, as you suggest, in the motion for reconsideration being too late, but also in the failure to appeal the merits determination. I would respectfully suggest that we can circumvent that sticky wicket with this. Both the magistrate, Judge Ford, and the district court, Judge Holmes, both solely hung their hat on Martinez. Therefore, they did not reach manifest injustice under cases... And they're cases that I'm sure will be very familiar to the court. Holland v. Florida, Carrier, Bell, Coleman, Schlup, right? These are manifest injustice. You can circumvent a procedural default either through Martinez or through an actual innocence showing this fundamental miscarriage of justice. I believe that the best that the attorney general can hope for is that if this court is going to deny application of Martinez, there would still have to be a remand for the district court to consider this evidence under those standards, right? Dr. Gilbert's testimony was not opposed by an expert. It was not impeached. Dr. Gilbert sat there in front of Judge Ford and testified very clearly. The SANE, which stands for sexual assault nurse exam, report from the Hamilton House showed this little girl's hymen's intact. That's why bringing it full circle back to Judge Holmes' discussion of prejudice, the prejudice is in the fact that we have testimony that the penis was inserted in the hymen according to this victim. And in that instance, if her hymen's fully intact, as Dr. Gilbert testified, she's never had intercourse. Now, I might as well drop the footnote and get to it. The state argued below, and I believe they've argued here, that you don't have to worry about sexual intercourse with the penis because there was digital penetration. Number one, if this court will look at the joint appendix, pages 73 through 76, this little girl talks about these fingers feeling weird because they're inside her vagina. So once again, if she's telling the truth, she doesn't have a hymen because it's not like the hymen can only be pierced by a penis but not by a finger, right? So that is why also, and, you know, it's frustrating because the state has characterized this as a new Strickland claim, and it never was. But that's why the absence in Arkansas of an alternative means unanimity instruction is so important. In other words, the state of Arkansas never asked this jury to decide, do you vote 12-0 that this was a penal penetration or a digital penetration? And since we don't know what they voted on, what they decided upon, that's why you cannot say that any of this was a harmless error. Well, counsel, that's only the, let me interrupt you, that's only the definition of deviant sexual activity, right? So all the jury has to find is sexual intercourse or deviant sexual activity. Do you think the jury has to agree on the definition of the term? Well, I know in Kansas and Missouri, what they have to agree upon is which of the alternative means they're convicting, right? So if you say, if you have a jury that says six people believe it was by penis and they vote guilty, and then the same, another six say we don't believe the penis, and then those six, different six say we believe finger, but another six say we don't believe finger, you can't convict on either theory in Missouri and Kansas. That's why we have unanimity. How about Arkansas? What's the law in Arkansas? Arkansas doesn't have the instruction, and so what I'm saying is because of the absence of the instruction in Arkansas, the state cannot avail itself of any type of harmless error argument because we don't know. We don't have proof that they convicted on a digital theory as opposed to a penile theory, but what I'm saying is if you will read testimony at pages 73 through 76 of the appendix, even the finger theory is taken away because the girl says the fingers were inside of me. It felt weird. And so I think it's up to the jury to decide, you know, the absence of a torn hymen disproves this girl's claims. What about the rest of the definition of deviant sexual activity, which has the traditional common law have or slight and also says of the labia of any part of the labia? Well, the point is without these unanimity instructions, we don't know what the jury convicted on, and we don't have indisputable or uncontroverted evidence that there was even a touching of the labia. Well, now, she says that several times on the pages you cited me to. She says that. She does, but my client does not. Right. So it's still up to a jury. The jury should be allowed to weigh her credibility knowing that her hymen is intact. And that's what Judge Ford found. Judge Holmes's only disagreement with Judge Ford was on the idea that, well, we don't have any evidence that the penis went past the labia, but we do. We have a question to the victim about her vagina. And she says, yes. Did it go in your vagina? Yes. So, Judge, I believe Judge Holmes missed that. If there are no further questions, I'm a little confused. I don't know if I've already gone into my rebuttal time. I didn't know that. You have gone into your rebuttal time. Okay. I apologize. If there are no other questions, I'd like to reserve. Very well. We're going to hear from Ms. Cain. Rebecca Cain on behalf of the Adelaide Dexter Clinic. Can you hear me all right? There's a little bit of an echo, but it's okay. Ma'am, please speak to the court. The district court's judgment denying Hartman's ineffective assistance of trial counsel claims based on the failure to present a committee of defense should be affirmed on three alternative grounds supported by the record. First, the claim was inexcusably procedurally defaulted on the Rule 37 appeal. Second, the state circuit court's merits adjudication of the claim is due deference under Section 2254D. And third, even though it's the position of the state that the federal court incorrectly held an evidentiary hearing and applied a de novo standard of review, the federal district court's finding on Strickland prejudice is unassailable, and the court's judgment may be affirmed on that basis. Going back to my first reason for affirmation. In Martin v. Ryan, the court established an exceedingly narrow exception to Coleman v. Thompson. Ineffective assistance of post-conviction review counsel can operate as cause if it results in the procedural default of an ineffective assistance of trial counsel claim in the initial review collateral proceeding. Here, the claim was presented, was adjudicated in the state circuit court, the court that conducted the initial review collateral proceeding. It was not procedurally defaulted in the initial review collateral proceeding. In Martinez, the court held that a procedural default occurred when a state court declined to hear a claim because the prisoner failed to abide by state procedural rules. This is not what occurred here. The claim was procedurally defaulted on the Rule 37 appeal when Hartman's post-conviction counsel failed to raise the claim on appeal. What about the counsel's argument, though, about, I mean, this is what's so weird about this case. There seemed to be two separate defaulting acts, one relating to the evidence and then one relating to the underlying merits. You're right. With the underlying merits, it was defaulted on appeal. With regard to the evidence, right, the chlamydia notes from the attorney, it seems to be that part of it seems to have been defaulted because it was not raised until the motion for reconsideration. So it just seems like a very strange circumstance. What do you make of opposing counsel's argument on that? I think that it is procedurally barred because the claim was not raised on appeal of the Rule 37 order, as well as, so that is the instant cause for the procedural default. And then the Rule 37.2D under the Arkansas Rules of Criminal Procedure is a second procedural bar. But I believe Judge Strauss said it was procedurally defaulted when post-conviction counsel failed to raise it on appeal. He raised two other claims in that appeal, but he did not raise this one. And under this Court's decision in Arnold v. Thomas, it is immaterial that Hartman's counsel failed to discover additional facts until after the circuit court had adjudicated the claim. Those additional facts have no impact on whether or not a procedural default occurred. So the discovery of new evidence has no bearing on whether the claim was actually presented, much less whether the state court's judgment rests on a state procedural ground. The second reason that the district court's judgment may be affirmed is that the state court's merits adjudication, the circuit court's merits adjudication, is due deference under 2254D because it was not contrary to and did not involve an unreasonable application of clearly established federal law. At the Rule 37 hearing, there was no medical evidence introduced to support Hartman's claim that he was infected with chlamydia. Although he claimed to have been diagnosed in 2010 and treated until 2015, he had no medical evidence to support this claim. There was no medical evidence to support the claim that the child did not have chlamydia. And further, Hartman's claim was undercut because he failed to disclose it when he completed his medical history upon being taken into ADC custody. The only evidence was that of Hartman's wife. And that was of her diagnosis. The presence of her medical record and the absence of Hartman speaks volumes. What do we do with the state of the record? And what I mean by that is the district or maybe the magistrate judge. The magistrate judge said you look at it de novo because the circuit court never considered the attorney notes and sort of had a different view of how to view the evidence. We, I think, have said you view the evidence as it existed before the circuit court. So it would be what was before the circuit court when it was considering the motion based on the evidence it had before the notes. What's the right answer to this? There seem to be two vastly different theories about this. One is that under pen holster, full and big pen holster, this federal habeas portrait review is limited to the record that was before the circuit court. So if that's true, then we apply the deferential standard without the attorney's notes. That would be the state's position. Correct. And I would like to make the point that the claim, just to look at the finding of deficiency, it begs the question of how, even if trial counsel had had the notes, how would he have proven the, well, excuse me, even if he had been told about the chlamydia infection? The World 37 record shows that he would not have been able to establish that without imploding his case. Without Hartman having any medical records to back his claim, he either had to call Hartman, and if he did that, he would have opened the door to some evidence regarding some allegations made by second minor victims, or his other option was to call Hartman's wife. But that would have opened the door to her testimony during a child custody hearing that she absolutely believed her daughter. So I would argue there wasn't any deficiency in his failure. And certainly, especially under Arkansas law, in which, in Kelly v. State, in which the Arkansas Supreme Court affirmed the trial court's finding that evidence of chlamydia was irrelevant to the issue of penetration. Now, did they say it was absolutely irrelevant, or did they say it's not a defense under Arkansas law? They said it was irrelevant. Okay. I thought it was just saying it wasn't a defense. But proceed. You say they say it was irrelevant. Go ahead. Setting aside the two procedural bars, the procedural bar and then the deferential review, moving to looking at even the improperly applied de novo standards, the district court's finding of no stricken prejudice is unacceptable. That finding must be considered in the context of evidence at trial and in the context of the evidence the state would have presented to rebut a committee of defense. At trial, the victim, ER, who was Hartman's stepdaughter and who was 7, 8, and 9 at the relevant time period, she testified that when they snuggled, he put his fingers and penis inside her private parts, and it sometimes hurt afterwards. She demonstrated how he placed his hand on his penis, placed her hand on his penis and forced her to manually stimulate him, and that this had occurred multiple times at multiple locations. Hartman, in his post-mortem statement to the detective, confessed to engaging in sexual activity with ER when they snuggled. He admitted that he had touched her vagina inside her underwear while her hand was on his penis, and he told the officer that this had occurred more than once over a two-year period. And that the last occasion had been the preceding Wednesday. Also in the evidence was the recorded telephone conversation Hartman had with his mother in which he admitted having touched the child. So the only issue at trial was penetration. Whether when he touched the child, he parted her labia majora however slightly. Based on the Arkansas definition of rape, it involves the penetration however slight of the labia majora. In the record here in the district court is the actual instruction that was given to the jury in the record? Yes, it is. It is. Do you know where it is? I do. It would take me one second to find it. But I can do that. But I will say this. Under Arkansas law, rape is an alternative means of crime. You can look at Logan v. State, 295R, 266, and 274. The jury was required to unanimously agree that the child was penetrated. It was not required to agree on the means of penetration. And the trial court's use of a general verdict form did not raise a constitutional issue. Your Honor, I think it would take me... Okay, you could do a 28J letter as far as I'm concerned. Okay, thank you. I will follow up with that. At the federal evidentiary hearing, Dr. Gilbert testified the DA never examined or reviewed Hartman's medical records. So he could not opine as to whether he had chlamydia. He conceded that the child's physical examination, which occurred when she reported the rape, it was not conclusively established in that examination that she did not have the infection. And he also testified it was not possible to transmit to a child whose hymen was intact. So there just was no medical evidence to support Hartman's claim. And even assuming that he did have the infection, according to his own expert, he could not have transmitted it to the victim by penile penetration or digital penetration.  The absence of hymen did not mean there was no penetration. The absence of chlamydia did not mean there was no penetration. The chlamydia evidence that was given at the federal hearing, it was not inconsistent with the minor victim's testimony. Thus, the absence of chlamydia evidence did not deprive Hartman of a trial whose results were reliable. For these reasons, unless the court has any further questions, the court should affirm the district court judgment. Very well. Hearing no further questions, Mr. Lorenz, your rebuttal. May I begin with procedural default, if that's okay? Your Honors, I think maybe the way to solve the conundrum is this. Which procedural default occurred first? The one in Rule 37 in Franklin County or the one alleged to have happened on appeal? You don't lose your procedural default in Franklin County because there may have been a subsequent briefing deficiency in the Arkansas Supreme Court. That would be the way I would resolve that. The Arkansas Supreme Court briefing deficiency would not ameliorate the Franklin County procedural default under Rule 37. That would be the first thing. The second thing is, it's not as if this issue about Ernie Witt's notes were not raised. They just weren't briefed the way the Arkansas Attorney General would have liked them phrased. But that was the idea of the brief, was saying, hey, because you denied the Rule 37 reconsideration request, I didn't get to fully expound on the assistance claim. Can we stop the clock for a second? Because now I can't hear. I think Ms. Cain's mic is on and I can't. Okay. Thank you. Sorry. Now it's back on. As with respect to double deference, here's the, here would be what I would suggest on double deference. You don't, you know, the Attorney General said we should look through all the way back to the Franklin County ruling. It's a whipsaw situation for the Franklin County court. Either we afford no deference because the Franklin County court didn't have the notes that Judge Ford found as positive, or we admit the reality. The Franklin County judge had the notes. And then he procedurally just declined to consider them in his ruling. But either way, that ruling from Franklin County in light of Ernie Witt's testimony to Judge Ford would not be entitled to any deference. It's clearly erroneous. The fact of the matter is that Witt tried to get out of having had the chlamydia notes, tried to call them his closing argument. No, but it was very dramatic courtroom testimony. He was wrong. Judge Ford dropped a footnote on him for the misrepresentation. Jeff Rosenzweig admitted that a separate set of notes that I gave to him that said hit the very top in a heading closing argument notes were the closing argument notes. And that the notes that had the chlamydia had my client's mother's phone number at the top. It was the intake notes when he took the case in. But one thing I would like to leave the court with. And that is we still are entitled. If this is procedurally defaulted, which I don't believe it is. I think Martinez excuses it, but in any event, we're still entitled to a remand for consideration of manifest injustice. The state keeps telling you that there was penetration. That's why this chlamydia evidence is so important. Hartman said he had chlamydia in front of judge Ford. It was unimpeached, but the key is. If Ernie Witt had pursued the chlamydia evidence, i.e. gotten a doctor. Took advantage of the Hamilton house notes. Then what Ernie Witt would have discovered is the reason that the girl couldn't get chlamydia is her Hyman's intact. And that completely contradicted her story. That is how the result of the trial would have been different. If you're a juror and you hear about this kid claiming she'd been raped for several years and it hurt and it was weird and there was penetration. And then a doctor like Gilbert comes in and says. Her Hyman's intact. It couldn't have happened that way. You would have voted to acquit. I thank you all for your time. And it is truly appreciated. Very well. Court also appreciate your appearance and arguments today. Both counsel. Case is an interesting one and we'll do our best to resolve it in due course.